Mr. Rudrakumaran May it please the court, my name is Viswanathan Rudrakumaran. I represent the petitioner in this case, Your Honor. The central feature of Mr. Perera's claim is that since he applied for asylum, just due to the fact that he applied for asylum, that he will have persecution if he is returned to Sri Lanka. I also must acknowledge there was an error that initially I mentioned the comparison should be from 2003 to 2016, but the BIA correctly noted the comparison should be from 2008 onwards. The BIA also initially said there was no meaningful comparison between the documents submitted in the original hearing and with the motion to reopen. However, having said that, the BIA itself engaged in a comparison between the documents submitted during the original hearing and along with the motion to reopen. Thus the issue before this court is whether that comparison, whether the documents submitted with the original hearing and the documents submitted with the motion to reopen constitutes a material change in country conditions. Our position is, Your Honor, that the substantial evidence does not support the BIA's finding that there is no meaningful material change. The BIA cited certain documents, especially the Netherlands case where the Tamil asylum seekers were not returned. As that document itself clearly states that he was prevented, the Netherlands government did not send them due to the fact that he is a Tamil. The Tamil ethnicity played a role. But in our case, we are not talking about the ethnicity. We are not talking about imputed political opinion. We are talking about the fact that he was not prevented due to the fact that he applied for asylum. So that is the salient feature of this case, Your Honor. Bearing the... Counsel? Counsel? This is Judge Carney. You noted in your brief that Mr. Pereira was removed to Sri Lanka sometime between February and August 2018. Was he able to enter the country without a problem and can you speak to where he is now in his current situation? I realize this isn't in the record before us, but it does bear on, it's something you likely know and it may bear on our consideration. Is he in Sri Lanka still? Yes, Your Honor. He is still in Sri Lanka now, Your Honor, yeah. And was he able to enter the country without a problem? I assume he's not incarcerated or otherwise detained, is that right? Initially detained and then he was allowed to go, I think, because my understanding they got some lawyers also involved in that case, yeah, Your Honor. Okay, thank you. So my argument, Your Honor, may I stop at the two minutes or may I continue, Your Honor? No, no. So we are proceeding to ask you questions now until your eight minutes of initial argument have concluded and you're at about three and a half at the moment. Let me ask you actually another question. So, you know, even if we were to agree with you that the situation in Sri Lanka towards returning asylum seekers has changed between, now we're talking 2008 and 2016, you know, we already decided in 2012 that Mr. Perera was unable to prove or had not proved that he belonged in a relevant persecuted group. He's not Tamil, as most of the asylum seekers who the government targeted are, and we rejected his argument that he was vulnerable because of his wife's family's ties to the LTTE. And so I'm wondering what is new here? So even if we were to disagree with the BIA about reopening, you know, he's back in Sri Lanka, he's not incarcerated, he has not been tortured. He has been proceeding with his life, and we rejected his claims earlier. So why should we think that his asylum application would in fact be likely to succeed rather than futile? Yes, Your Honor, my initial response, Your Honor, the court's decision is based exclusively on the record itself, Your Honor. And as I mentioned earlier, I do not have all the details what happened when he went to Sri Lanka. So with all due respect, I don't think that should have any influence in the decision of this court, because the court's decision should be based primarily on the, exclusively on the record before the court. Yes, yes, but I'm asking how is his claim, even if we were to agree with you just with respect to changed country conditions, why is there any reason to believe that our decision in 2012 would not apply now, that the circumstances about his ethnic group and his, the basis for claiming persecution would succeed now when they did not before? Your Honor, this, the motion to, the claim premised on the motion to reopen is completely independent of the claim that he advanced in his original proceedings. We are not arguing that based on his ethnicity or based on his relationship to the wife that he will have problems. The motion to reopen is a separately entirely independent claim. The mere fact, in fact, the court has addressed this issue in Paul v. Gonsalas. Paul v. Gonsalas also the same thing, the court initially rejected his claim, but then in the motion to reopen based on an entirely new claim, the court was with the petitioner in that case. So similarly here, we are not arguing based on his wife's relationship he will have problems. We are not arguing because of his single ethnicity or Tamil ethnicity he will have problems. Here the basis is the mere fact that he sought asylum. That is, it's an independent claim. This claim was not raised in the original proceedings. So this is an independent claim, Your Honor, it's not, this claim is not changed by the court's findings previously with respect to his original proceedings, Your Honor. All right, we'll hear what the government has to say about that. You have another minute to go, I'd say. Let me, let me, this is Judge Kears, let me ask a question. Is your argument that the cognizable group to which your client belongs now is the group of persons returning after having been denied asylum in the United States? Yes, Your Honor, I am not arguing that he constitutes the return asylum seekers constitutes a particular social group. I am not advancing that argument. I never, I did not advance that argument. My argument, Your Honor, that the court's, the review here is whether there is a material change in the condition. Once we pass that hearing, then we go on what basis he will have asylum. And our position is, based on the 11th Circuit case, which I have cited, it's a Sri Lankan case, and also the Australian materials, that whenever people ask asylum, they will be perceived, if he were a Tamil, he will be perceived as a liberation tiger sympathizer. If he's a Sinhalese, he will be perceived as a traitor. So when, if you pass this material, whether there is a material change, and we go to the He will be persecuted on account of imputed political opinion. He will be perceived as a traitor for asking asylum in another country, Your Honor. Thank you. And is it your view, counsel, also that the prior adverse credibility finding that was sustained with respect to your client has no bearing on his current motion to reopen claims? Yes, Your Honor. Yes, Your Honor. Because this is an independent claim, and this claim is premised on objective fact. The fact that he sought asylum is an objective fact. So the prior adverse credibility finding has no bearing whatsoever. In this case, this is similar to Paul v. Gonzalez, the same factual posture, Your Honor. All right. I believe your time is up for the moment. You have reserved two minutes of rebuttal. We'll hear from the government. Thank you. Thank you, Your Honor. May it please the Court, Trimma Cotter on behalf of Respondent Jeffrey Rosen. The Court should deny the petition because the record does not compel the conclusion that conditions have maturely worsened for return asylum seekers in Sri Lanka. Motions to reopen at the BIA are extremely disfavored, and Petitioner had a very heavy burden to demonstrate eligibility for relief. But substantial evidence does confirm that problems for asylum seekers have existed in Sri Lanka, meaning it is not a changed condition. First, as the BIA noted on page two of its decision, in 2006, the UN Commissioner on Human Rights said that those asylum seekers from Sri Lanka whose claims were previously denied should be given a new review. So that's time denied asylum to risks faced upon return, and that's 15 years ago. And that was not limited to Tamils either. Second, the BIA referenced the 2007 State Department report that this Court used in the case of Vianaj from 2014. The BIA relied on this Court's description of that report, which confirmed that any mistreatment of individuals who return to Sri Lanka from abroad is a continuation of prior practices, not a change in country conditions. Third, the BIA also noted on page two of its decision, a 2007 news report saying the Netherlands was not sending Tamil asylum seekers back at that time, and that's relevant because the petitioner says that Sinhalese who are returned are seen as being complicit with Tamils and are treated the same. You can see that in his record, AR pages 127, 133, and 137. So the evidence of Tamil mistreatment does show problems generally for people returning to Sri Lanka. In fact, petitioners' own reports of recent conditions often cite only to Tamils. For example, AR 145 and AR 150 are both recent reports petitioners submitted below that refer to conditions only for Tamils. So taken together, there is certainly enough material to meet the minimal requirement of substantial evidence review and deny the petition as this Court did in Vianaj in 2014. And moreover, the Court could also deny relief on the alternative basis the BIA provided, namely that in his motion to reopen, petitioner focused on current conditions and failed to point to documents or declarations showing what conditions were like for denied asylum seekers in 2008. Rather, he focused on current conditions, said they're bad, attached 200 pages of materials that didn't provide actual evidence or analysis of the old conditions, and that also is enough to deny relief under CFR 1003.2, which says the motion to reopen shall state the new facts that will be proven and shall support them with evidence or declarations. And for those reasons... This is Judge Carney, I have a question for you. We're focusing on changes in conditions between 2008 and 2016. And my understanding is that in around 2009, the multi-decade civil war that was going on in Sri Lanka finally ended. And that suggests to me that that creates possibly some presumption of changed country conditions, because the country went from a state of war to a different, more stable situation, albeit with likely continuing ethnic tensions, and possibly worse. But I'm having some difficulty accepting the government's argument that there was persecution of asylum seekers in 2007, and there's persecution now. And so we should have Mr. Pereira be subjected to those bad conditions and that persecution, because it's maybe not materially worsened. Am I misunderstanding your argument in some way? A few responses there, Your Honor. I think the argument that things might have changed in 2009, perhaps they did in some other respect, but I don't think the record bears out that they changed materially on this particular question of returned asylum seekers. Leonage itself involved a BIA decision from 2010, the original decision. And here, the BIA decision was 2011. So I don't think the timeline between those two cases is very different. I'm having trouble, though, relying on Leonage, because that finding depends on how the record was developed. And it wasn't as if in Leonage, particularly in the summary order, that we made a decision that binds future panels about what the factual situation was in Sri Lanka. It wasn't a historical investigation. It was an assessment of the record at the time. Maybe you could address my other question, which is about the merits of the claim that Mr. Pereira seeks to assert, and whether that was basically already addressed in 2012, and whether it differs in any way now from then, such that if we were to disagree with you about the changed country conditions, we should consider it, and he might get a different result. All right. On the second question, Your Honor, I think I do, Your Honor, yes. So the petitioner did change his theory between his first BIA proceeding and his motion to reopen. His protected basis changed from the fact that he was a creditor to the fact that he was a denied asylum seeker. This court, I couldn't find a decision saying the petitioner can change a theory completely like that. The Ninth Circuit, I believe, has said that a petitioner can do that. But I do think that he's going to have a lot of problems trying to persuade the BIA, or maybe this court, on his new claim, because, as you pointed out, Your Honor, and as the Petitioner's Counsel pointed out, the fact that he's not having any issues now in Sri Lanka indicates that he is not likely, doesn't have a chance of facing persecution upon return. And also, the fact that he was found not credible in his prior proceeding, it's not necessarily an absolute bar to relief on a reopening, but it's a very strong thumb on the scale. Essentially, the only way he could get around it would be to show a pattern or practice of persecution, which is an extremely high bar, Your Honor. And if I could, to try to answer your first question again, Your Honor, just one of our points, and I think the BIA's alternative argument below, is that the burden was always on the petitioner to introduce evidence of what conditions were like in 2008 for denied asylum seekers. And to the extent that we just don't know in 2008 or the results of the 2009 change in the war status in Sri Lanka, then that failure lands it on, excuse me, lands on the petitioner because it was his burden under the regulations and under the statute to produce that evidence. I think that was what the BIA was saying in its first ground for denying relief. The petitioner focused on current conditions, which seemed to indicate there are problems for people who are sent back, perhaps, who've been denied asylum, but he never explains what those conditions were like in 2008, which was the key time period here. And the test is, of course, one more condition. Let me interrupt, if I may. So, I mean, it seems though information is lacking as to maybe 2008, and you've pointed to a 2007 State Department report that doesn't really seem to address the persecution of asylum seekers from my review, but why isn't enough to focus on a change from 2010 onward if it's, in fact, gotten that much more serious? It's now, you know, that's showing a trend and a worsening from roughly the time that we last saw his petition to now, you know, a decade later. Why isn't that a condition? Sorry, Your Honor. The relevant time period for the initial consideration, Your Honor, is definitely 2008. The BIA said, and SYG, this is cited in the brief, Your Honor, 24INN decision at 253, that the relevant time period is the current conditions at the time of the motion to reopen versus the time that existed, or excuse me, versus the conditions that existed at the time of the merits hearing below. And the merits hearing here was 2008, not 2010 or 2011. So we should compare back to 2008, Your Honor. Is that a standard, though, tied to an assumption that the grounds for the petition would have been the same, both in the initial merits determination and the current motion to reopen? I've seen the same test in every case, Your Honor. It's always compared back to the time of the merits hearing below. And I think the petitioner himself, in his opening argument, agreed that the relevant time was 2008, if I remember hearing him correctly, given that that was the last merits hearing that he had. So I do think the relevant time period... Judge LaValle, may I interject a comment? Pursuing Judge Carney's line of questioning, it seems to me that the conditions very shortly after the relevant time period, the relevant kickoff period, are good evidence of what the conditions were a little bit before. In other words, I mean, supposing, to make the argument more extreme, if we had evidence of what the conditions were one month after his earlier hearing, that would be good evidence, even though there were no evidence of what it was a month earlier, what it was a month later, absent of showing to the contrary, is pretty good evidence of what the conditions were a month earlier. And so Judge Carney is saying, well, we have evidence of what they were in 2010, which is 10 years ago as opposed to 12 years ago. Isn't 2010 evidence decent evidence of what they were in 2008? I think it could be, Your Honor. I don't know what Judge Carney meant, but that seems to me a possible argument. I think it could be, Your Honor. Yes. And one of the petitioner's articles that he cited below was from 2010, referencing things that had happened in the prior year that indicated that return to file-in seekers were still facing problems as of that time period. So I think to the extent we try to define what the situation was in 2009 or 2010 or 2008 as the actual relevant time, then the evidence supports the BIA's conclusion that this has been an ongoing problem, Your Honor. And again, it was the petitioner's burden to introduce evidence as to the relevant time period, 2008. And this court held in Schau, that's 546 F3rd 157, that the petitioner's failure to deny relief, just because that burden is on the petitioner, to try to show what conditions were like. And as the BIA noted, even back in 2006, there could be problems for return to file-in seekers, and it's been ongoing at least for 15 years, Your Honor. So the question isn't so much what things were like in 2017 or 2010 necessarily, but rather, has it changed since 2008? Thank you, Mr. McCuller. Thank you. Thank you very much. Mr. Wudrakumaran, you have two minutes to rebuttal. Thank you, Judge. Your Honor, the only issue before this court is whether there is a material change between 2008 and 2016. That's the only issue before this court, Your Honor. And our position is that the documents cited by the BIA and by the respondent, the return of their possible link to the Liberation Tigers, not a single evidence before 2008 that shows that they were persecuted or the fear of persecution due to the mere fact that they sought asylum. That is the distinct factor in this case. In fact, in the Lienage case, even I agree with the court, the Lienage case has no bearing because it's factual based on the record, but in the Lienage case, Your Honor, this evidence that there is a pattern or practice of persecution of failed asylum seekers in Sri Lanka or that filing for asylum alone would result in increased risk. So the court analyzed this feature in the Lienage case where filing asylum alone would have a problem and the court in the Lienage case said there was no evidence that filing asylum alone will lead to trouble. But here we produce evidence, Your Honor, that filing asylum alone will put you into trouble. That's the distinct factor in this case from other cases. The government and the BIA are simply saying that return asylum seekers were persecuted for the last 15-20 years, but during that time they were persecuted because of their ethnicity or because of possible link to the Liberation Tigers, but not because that they applied for asylum. That's the only reason. Because of that reason they were not persecuted in the past, but because of that reason they are being persecuted now, Your Honor. Thank you very much. We have the arguments. We will reserve decision. Thank you, Your Honor.